# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| DAVID HERNANDEZ, | Case No. EDCV 09-720 (SH) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Plaintiff's Brief with Points and Authorities in Support of Remand

1

or Reversal; Defendant's Brief with Points and Authorities in Opposition to Plaintiff's Request for Remand or Reversal), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On January 25, 2007, plaintiff Daniel Sullivan filed an application for Supplemental Security Income, alleging an inability to work since January 25, 2006, due to loss of vision, arthritis, a thyroid problem, sleep apnea, dizziness, anxiety, a mental condition, and depression. (Administrative Record ["AR"] 110-37). On September 3, 2008, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 12-22).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (AR 1-3), plaintiff filed an action in this Court.

Plaintiff makes four challenges to the ALJ's Decision denying benefits. Plaintiff alleges that the ALJ erred in (1) determining that plaintiff could perform the jobs of dry cleaner, cleaner/housekeeper and routing clerk; (2) failing to properly consider the treating sources' opinions regarding plaintiff's mental impairments and limitations; (3) failing to properly develop the record; and (4) selectively ignoring, minimizing or misstating evidence in the record.

For the reasons discussed below, the Court concludes that the decision of the Commissioner should be affirmed.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ improperly determined that plaintiff could perform the jobs of housekeeper/cleaner, dry cleaner, and routine clerk. Defendant argues that the ALJ properly found that plaintiff could perform such jobs.

In the Decision, the ALJ initially found that plaintiff had the following severe impairments: degenerative changes in the cervical spine with a history of back pain; loss of vision in the left eye; poor hearing with a history of dizziness; history of sleep apnea;

hypothyroidism; arthritis in the knees; psychotic disorder not otherwise specified, and depressive disorder not otherwise specified. (AR 14).

The ALJ subsequently found that plaintiff had the following residual functional capacity ("RFC"):

> ". . . [T]he claimant has the residual functional capacity to perform light work . . . except he is able to perform occasional postural activities but no climbing ladders, ropes, working at heights or around moving machinery. He is limited to work requiring only monocular vision and limited hearing. The claimant is able to perform simple repetitive nonpublic tasks with occasional non-intense contact with supervisors and coworkers and with work that does not require hypervigilence, safety responsibilities, or responsibilities for work of others." (AR 15).

Based on the vocational expert's testimony that a person with plaintiff's RFC could perform the jobs of housekeeper/cleaner, dry cleaner, and routing clerk (see AR 53-57), using descriptions consistent with descriptions contained in the Dictionary of occupational Titles ("DOT") [1] (see AR 49), the ALJ determined that plaintiff could

---

[1] DOT 323.687-014 defines the duties of a cleaner, housekeeping as follows: "Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (and industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.)."

DOT 589.685-038 defines the duties of a dry cleaner as follows: "Tends cleaning machines and drier that clean and dry knitted garments: Examines garments for soil and determines type of soil. Lays garment on cleaning board with spotted surface exposed. Applies soap solvent to spot with brush and removes excess soap with towel. Opens valve to admit cleaning fluid to tank of washing machine. Lays spotted garment in machine and starts machine. Stops machine after specified time, and removes and places garment in drier. Removes garment from drier and hangs garment on hook in clothes room. Turns fan on in clothes room to drive cleaning fluid fumes from clothes. Removes garment from

(continued...)

perform those jobs.  (See AR 22).

Contrary to plaintiff's assertion, the job of housekeeper is not inconsistent with plaintiff's RFC, because it does not require significant interaction with people and it does not involve the activity of hearing.  See DOT 323.687-014.

Contrary to plaintiff's assertion, the job of dry cleaner is not inconsistent with plaintiff's RFC, because it does not require working around moving mechanical parts.  See DOT 589.685-038.

Contrary to plaintiff's assertion, the job of routing clerk is not inconsistent with plaintiff's RFC, because it does not necessarily require working as a Conveyor Belt Package Sorter.  Working with a Conveyor Belt Package Sorter would only occur, if at all, in the retail trade.  See DOT 222.687-022.

As plaintiff asserts, the RFC limiting him to work requiring only monocular vision because of blindness in his left eye (see AR 18, 282, 309) appears to contradict a routing clerk's requirement of frequent near vision acuity, see DOT 222.687-022.  However, since plaintiff has nearly normal vision in his right eye except for depth perception (see AR 18, 282) and since the job of routing clerk does not involve depth perception, see DOT 222.687-022, he may be able to perform that job.

In any event, even if the ALJ erred in finding that plaintiff can perform the job of routing clerk, the ALJ's finding is harmless in light of the ALJ's determination that plaintiff can perform the two other jobs.  See Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 434 (9th Cir. 1988) (concluding that any error the ALJ committed

---

[1] (...continued)
clothes room."

DOT 222.687-022 defines the duties of a routing clerk as follows: "Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts.  Places or stacks articles in bins designated according to route, driver, or type.  May be designated according to work station as Conveyor Belt Package Sorter (retail trade).  May sorts sacks of mail and be known as mail sorter (r.r. trans.)."

4

in classifying the claimants' past work as "light" was harmless in light of the ALJ's finding that claimant was able to perform other light work).

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. William MacMorran, plaintiff's treating psychiatrist, and Kevin Kirsch, a marriage and family therapist. In response, defendant argues that the ALJ provided specific and legitimate reasons for rejecting the opinion evidence of Dr. MacMorran and Mr. Kirsch.

In a "Episode Opening/Closing" report dated January 4, 2007, Kevin Kirsch, a marriage and family therapist for the Riverside County Department of Mental Health, stated that plaintiff had a psychotic disorder not otherwise specified and that plaintiff had a Global Assessment of Functioning ("GAF") score of 30/35.[2] (See AR 309-13).

On January 18, 2007, following an evaluation of plaintiff, Dr. William MacMorran, a staff psychiatrist for the Riverside County Department of Mental Health, prepared a report. Dr. MacMorran noted that plaintiff complained of anxiety, insomnia, and hearing a voice calling his name, and diagnosed plaintiff with a psychotic disorder not otherwise specified, alcoholism in remission, and a GAF score of 40/40. (See AR 279).

---

[2] A GAF score of 21 to 30 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communiction or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends). See Diagnostic and Statistical Manual of Mental Disorders, Text Revision ("DSM-IV") at 34 (4th ed. 2000).

A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." See id.

After noting that plaintiff had not received any mental health treatment while incarcerated and that plaintiff had not sought any significant mental health treatment until January 2007, and after summarizing the January 4 and 17, 2007 records prepared by Mr. Kirsch and Dr. MacMorran (see AR 19, citing 276-81, 307-16), the ALJ specifically addressed plaintiff's low GAF scores, as follows:

> "While the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994) gives some descriptions that can be followed in defining a Global Assessment of Functioning score, there is really no evidence to indicate the reliability of a particular score means a particular limitation in work ability. Although that does indicate some limitations in [his] functioning, this score represents merely a snapshot in time and is not supported by the overall medical evidence of record and does not speak directly to his work capacity over a consecutive 12 month period or longer.  Moreover, at the time of the mental status evaluations, there was no significant evidence based on the doctor's statement for a GAF score that low.  Moreover, a subsequent examination notes improvement in the claimant's mental health (Exhibit 5F).  Therefore, I give little probative weight to these scores."  (AR 19).

Here, the ALJ provided specific and legitimate reasons for rejecting the opinion evidence of Dr. MacMorran and Mr. Kirsch. See Morgan v. Apfel, 169 F.3d 595, 596 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Magallanes v. Bowen, 881 F.2d 747, 751 (1989)("To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."). The GAF scores were intended to be used to make treatment decisions, and did not indicate a particular work limitation for any length of time. See DSM-IV at 32-33; see also 65 Fed. Reg. 50746, 50764-65 ("[The GAF scale] does not have a direct correlation to the severity requirements in [the Social Security Administration'] mental

disorders listings."). Neither the Social Security regulations nor case law require an ALJ to determine the extent of an individual's disability based solely on his GAF score.

Moreover, the ALJ's determination about plaintiff's RFC, as well as the ALJ's decision to give minimal weight to the low GAF scores, was supported by reports subsequently prepared by Dr. MacMorran, including Dr. MacMorran's March 15, 2007 report noting that plaintiff had improved sleep with medication, that plaintiff had a linear thought process, that plaintiff had no current auditory or visual hallucinations (he reported hearing an "occasional voice" calling his name), that plaintiff had mildly reduced paranoia and no delusions (although he suffered anxiety when leaving the house and when being around other people), and that plaintiff had made some progress towards achieving his goals (see AR 19, 308); and Dr. MacMorran's June 7, 2007 report noting that plaintiff felt his medication was "very helpful," that plaintiff heard chronic voices "but better than before," that plaintiff had a linear thought process, no visual hallucinations, mildly reduced paranoia, and no evident delusions, and that plaintiff had made some progress towards achieving his goals (see AR 19, 307).

Moreover, the ALJ's determination about plaintiff's RFC, as well as the ALJ's decision to give minimal weight to the low GAF scores, was supported by the April 7, 2007 report of consultative psychologist, Robin Rhodes-Campbell, Ph.D., who performed a complete psychiatric evaluation on plaintiff. Dr. Rhodes-Campbell noted that plaintiff was able to do household chores, run errands, shop, cook, dress and bathe. Dr. Rhodes-Campbell reported that plaintiff had a linear thought process, did not have auditory or visual hallucinations, delusions or illusions, and had no difficulty with concentration. Dr. Rhodes-Campbell diagnosed plaintiff with depressive disorder, not otherwise specified (and ruled out major depressive disorder with psychotic features), and gave plaintiff a GAF score of 60. Dr. Rhodes-Campbell concluded that plaintiff "should have no impairment in understanding, remembering, and carrying out short simple instructions" (but was mildly impaired in his ability to understand, remember and carry out detailed

instructions); that plaintiff had a mild-to-moderate impairment in relating to the public, supervisors and co-workers; and that plaintiff had a mild-to-moderate impairment in withstanding stress and changes associated with an 8-hour workday and day-to-day work activities (See AR 19-20, 285-90). Dr. Rhodes-Campbell's opinions constituted substantial evidence in support of the ALJ's findings about plaintiff's residual functioning capacity.  See Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)(Where "the opinion of a treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Finally, the ALJ's determination about plaintiff's RFC, as well as the ALJ's decision to give minimal weight to the low GAF scores, was supported by the testimony of State Agency medical experts Herbert Hurwitz, M.D. and R.B. Paxton, M.D and medical expert David Glassmyre, Ph.D.  In a Mental Residual Functional Assessment report dated April 26, 2007, Dr. Hurwitz concluded that plaintiff was moderately limited only in his abilities to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public. (See AR 20, 199-209, 298-305). In a Case Analysis report dated July 6, 2007, Dr. Paxton concluded that plaintiff was limited to performing non-public work with simple, repetitive tasks. (See AR 20, 317-18).  At the July 25, 2008 administrative hearing, Dr. Glassmyer, a clinical psychologist, testified that, based on his review of plaintiff's medical records, plaintiff was limited to simple, repetitive nonpublic tasks, with occasional non-intense contact with co-workers and supervisors, and without hypervigilence or safety responsibilities.  (See AR 20, 28-31).

Dr. Hurwitz' and Dr. Paxton's opinions, which were consistent with Dr. Rhodes-Campbell's opinions, and Dr. Glassmyre's opinions, which were consistent with Dr. Campbell's, Dr. Hurwitz and Dr. Paxton's opinions, also constituted substantial evidence in support of the ALJ's findings about plaintiff's residual functioning capacity. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); 20 C.F.R. § 404.1513(c).

**ISSUE NO. 3**

Plaintiff asserts that the ALJ erred in developing the record by failing to obtain Dr. MacMorran's opinion as to whether or not plaintiff could work for a consecutive period of at least 12 months, by failing to obtain missing pages from an "Evaluation Form for Mental Disorders," and by failing to discover the identity of the person who completed that form. In response, defendant argues that the ALJ properly developed the record.

Contrary to plaintiff's assertion, the ALJ did not err in failing to obtain Dr. MacMorran's opinion as to whether or not plaintiff could work for a consecutive period of at least 12 months. As noted by the ALJ, there was no evidence that plaintiff received mental health treatment while incarcerated, nor was there any evidence that plaintiff sought significant mental health treatment until January 2007. (See AR 19). Consequently, Dr. MacMorran would not have been able to testify about plaintiff's mental health on January 25, 2006, plaintiff's alleged onset date. Moreover, any opinion by Dr. MacMorran that plaintiff could not work for a consecutive period of at least 12 months would have been refuted by evidence cited by the ALJ, including Dr. MacMorran's March 15, 2007 and June 7, 2007 treatment notes (plaintiff reported showing some progress; Dr. MacMorran believed plaintiff showed some progress), Dr. Rhodes-Campbell's April 7, 2007 evaluation, Dr. Hurwitz' April 26, 2007 evaluation, Dr.

Paxton's July 6, 2007 evaluation, and Dr. Glassmyre's testimony. (See AR 19-20, 29-31, 285-90, 298-305, 307-08, 317-18).

The administrative record contains only two pages of an "Evaluation Form for Mental Disorders." That form states that plaintiff was first examined on January 18, 2007 and was most recently examined on February 15, 2007. The evaluator noted that plaintiff complained about being depressed, hearing voices, being anxious around people (he avoids going into stores), watching his back, and that plaintiff stated the symptoms began in prison eight years earlier, and had become worse since his release in September 2006. With respect to plaintiff's current level of functioning, the evaluator noted the following: that plaintiff's mother helped him with food and shopping and reminded him to bathe and shower; that he was isolated and had no friends; that plaintiff's ability to sustain focused attention, complete everyday household routines, follow and understand simple written or oral instructions, etc. was poor; and that plaintiff's ability to adapt to stresses common to the work environment including decision making, attendance, schedules, and interaction with supervisors was poor (he became easily overwhelmed). (See AR 283-84).

It is not clear whether that form consisted of more than the two pages contained in the administrative record. However, even without the entire form, the ALJ was able to conduct a proper evaluation of the evidence. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001)("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Even if the ALJ erred by failing to obtain missing pages from that form, or by failing to discover the identity of the person who completed that form, such error was harmless. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless."). As discussed by the ALJ, and as discussed above, that evaluation was not consistent with the overall medical evidence.

**ISSUE NO. 4:**

Plaintiff asserts that the ALJ selectively ignored, minimized or misstated evidence in the record -- specifically, Mr. Kirsch's January 4, 2007 report, Dr. MacMorran's June 7, 2007 report, and a third party function report by Nellie Martinez (plaintiff's sister). Defendant asserts that the ALJ properly considered such evidence.

Plaintiff initially contends that, when discussing the treatment records from the Riverside County Department of Mental Health (beginning in January 2007), the ALJ improperly stated that plaintiff "occasionally would hear voices but he denied visual hallucinations" (see AR 19). Plaintiff claims that the ALJ's statement is contradicted by Mr. Kirsch's notations (in the January 4, 2007 report) of "V/H [visual hallucinations] shadows" and "T/H [tactile hallucinations] someone grabbing his arm (see AR 276) and by Dr. MacMorran's notation (in the June 7, 2007 report) of "chronic negative voices" (see AR 307).

However, in light of Dr. MacMorran's notations (in the March 15, 2007 report) of "no current voices or visual hallucinations" and "no delusions evident" (see AR 308), and in light of Dr. MacMorran's notations (in the June 7, 2007 report) of "no visual hallucinations", and "no delusions evident", and plaintiff's own report of some progress (see AR 307), the ALJ did not misstate the evidence.

Plaintiff also complains that, although the ALJ stated that Dr. MacMorran (in the June 7, 2007 report) "notes the claimant reported some improvement" and that "there is no evidence of any further mental health treatment since June 2007" (see AR 19), the ALJ failed to address Dr. MacMorran's notations (in the June 7, 2007 report) of "severe and persistent mental illness," plaintiff's "stressed" mood and constricted affect, a possible medicine change ("Consider SSRI in future if anxiety sx remains prominent"), and a treatment plan ("Provide[] supportive psychotherapy, psychoeducation").

Contrary to plaintiff's assertion, the ALJ considered the entirety of that report. It was not necessary for the ALJ to address every notation in that report. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'").

The ALJ's determination about plaintiff's impairment and limitations was not solely based on the notation in that report that plaintiff reported some improvement; it was also based on the reports of Dr. Rhodes-Campbell, Dr. Hurwitz, Dr. Paxton (who had reviewed the June 7, 2007 report, see AR 317), and the testimony of Dr. Glassmyre (whose testimony was primarily based on his review of the records from Riverside County Department of Mental Health, see AR 29-30). The fact that the ALJ noted that plaintiff reported some progress did not preclude the ALJ from finding that plaintiff had a mental impairment which limited him in certain respects (i.e., simple repetitive nonpublic tasks; occasional non-intense contact with supervisors and coworkers; work that does not require hypervigilence, safety responsibilities, or responsibilities for work of others).

Finally, plaintiff claims that the ALJ failed to address statements made by plaintiff's sister, Nellie Martinez, in a "Function Report – Adult – Third Party" dated February 28, 2007 that plaintiff cannot sleep well because of stress, that plaintiff cannot drive because of anxiety, that plaintiff does not handle stress or changes to routine well because of anxiety, and that plaintiff fears being around other people and in large groups (see AR 130-137). Plaintiff further claims that plaintiff did not provide germane reasons for rejecting plaintiff's sister's testimony concerning plaintiff's anxiety symptoms.

The ALJ summarized that report as follows:

> "In a third party function report, the claimant's sister Nellie Martinez, simply parrots the statements of the claimant (Exhibit 4E). The claimant . . . does nothing during the day other than watch television. He does no cooking, household chores, or yard work, and he is unable to go outside alone. She said he does not socialize

due to anxiety as a result of being separated from society in prison for eight years. He is unable to use his hands, lift, stand or walk due to arthritis, and he has difficulty talking or seeing. She said he uses a cane, hearing aids, and glasses. Yet, these statements are inconsistent with statements in the same report. Ms. Martinez asserts he does not need anyone to accompany him when he goes out, and he does not need reminders to do things. He goes shopping and he has no problems getting along with friends, family, neighbors, others, and authority figures. The claimant is able to take care of his own personal needs (Exhibit 4E). (AR 16).

The ALJ found that plaintiff's sister's statements were not credible for several reasons: (1) there were inconsistent statements in her own report; (2) her statements were inconsistent with statements made by plaintiff to Dr. Rhodes-Campbell; (3) her statements were not supported by objective medical evidence; (4) her statements were not given under oath; and (5) as a lay witness, she was not competent to make a diagnosis or argue the severity of plaintiff's symptoms in relationship to his ability to work. (See AR 16-17).

Here, contrary to plaintiff's assertion, the ALJ considered all of the statements made by plaintiff's sister in her report, and the ALJ gave germane reasons for discounting plaintiff's sister's testimony. See Dodrill v. Shalala, 13 F.3d 915, 919 (9th Cir. 1993)("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

The fourth and fifth reasons given by the ALJ were not proper. See Schneider v. Commissioner of Social Sec. Admin., 223 F.3d 968, 974-75 (9th Cir. 2000)(finding that the ALJ should have considered letters submitted by the claimant's ex-employers and friends in evaluating the severity of the claimant's functional limitations), Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988)("[D]escriptions by friends and family

members in a position to observe [plaintiff's] symptoms and daily activities have routinely been treated as competent evidence."); Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)("[T]he ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions."); 20 C.F.R. § 404.1513(d)(4) (evidence by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work").

However, the first, second and third reasons given by the ALJ were proper. As noted by the ALJ (see AR 16), plaintiff's sister's report contains inconsistencies -- specifically, her statement that plaintiff is unable to go outside alone (AR 133) is inconsistent with her statement that plaintiff does not need anyone to accompany him when he goes out (AR 134); and her statement that plaintiff does not socialize (AR 134) is inconsistent with her statement that plaintiff has no problems getting along with friends, family, neighbors, others and authority figures (AR 135). Moreover, as noted by the ALJ (see AR 16), plaintiff's sister's statements were inconsistent with plaintiff's statements to Dr. Rhodes-Campbell that he sleeps well with medication and is able to do household chores, run errands, and cook (AR 287). Finally, as noted by the ALJ (see AR 16-17), plaintiff's sister's statements about plaintiff's activities and limitations were not consistent with the overall medical record. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)(Inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness).

## ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: May 18, 2010

STEPHEN J. HILLMAN

|     |     |
| --- | --- |
| 1   | UNITED STATES MAGISTRATE JUDGE |